UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 11-28-GWU

CAROLYN HOWARD, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

>   Impairments).  If so, disability is conclusively presumed and benefits are awarded.
>
> 4.  At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5.  If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

4

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. <u>Id</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Carolyn Howard, was found by an administrative law judge (ALJ) to have "severe" impairments consisting of a history of headaches, diffuse pain syndrome, and a major depressive disorder. (Tr. 15). Based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs in the economy, and therefore was not entitled to benefits. (Tr. 20-25). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 50-year-old woman with a high school equivalency education and unskilled work experience, could perform any jobs if she were limited to lifting 20 pounds occasionally and 10 pounds frequently, with the option of sitting or standing at 30-minute intervals, could only occasionally climb and bend, was capable of

understanding, remembering, and carrying out simple instructions in two-hour segments over an eight-hour day, and could tolerate object-focused work settings and adapt to routine changes.  (Tr. 46).  Part of the VE's response was transcribed as "inaudible" in the court transcript, but she did identify certain jobs including ticket taker and cashier which such a person could perform,[1] and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 46-7).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

One of the issues raised by the plaintiff on appeal is that the ALJ did not properly consider the entire record, "including the reports of various professionals, all of which significantly restrict Plaintiff" in reaching his functional capacity conclusions.  To the extent that the plaintiff is arguing that the ALJ was required to accept the opinion of his treating psychiatrist, or that the ALJ did not give good reasons for rejecting the treating source opinion, his argument fails. The court agrees, however, that the administrative decision does not follow the Commissioner's regulations which require the ALJ to explain the weight given to the opinions of state agency consultants.

The plaintiff sought mental health treatment during the period relevant to the present application from psychiatrists Martin Siegel and Zev Zusman, who

---

[1] The ALJ identified the other job as parking lot attendant in the decision.

diagnosed major depression and a panic disorder, and prescribed medication. (E.g., Tr. 278-81). They did not suggest functional restrictions.

Subsequently, the plaintiff was treated at the Comprehensive Care Center (CCC) by psychiatrist John Schremly, who diagnosed depressive and anxiety disorders, "provisional" paranoid schizophrenia, and cannabis abuse. (Tr. 468). He assigned a Global Assessment of Functioning (GAF) score of 50. (Id.). A GAF score in this range reflects serious symptoms or any serious impairment in social, occupational, or school functioning. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision) (DSM-IV-TR), p. 34. Subsequently, Dr. Schremly completed a mental residual functional capacity form, after several months of treatment, listing the same diagnoses, but including post-traumatic stress, and noted that he had been unable to treat her symptoms of psychosis initially because of liver disease. (Tr. 538). He opined that she would have poor or no ability in most areas.[2] In terms of the "B" criteria of the Commissioner's Listings of Impairment, Dr.

---

[2] Specifically, she would have "poor or no" ability to remember work-like procedures, understand, remember, and carry out short and simple instructions, maintain attention for two-hour segments, sustain ordinary routines without special supervision, work in coordination with or proximity to others without being distracted, complete a normal workday and workweek without interruptions from psychologically-based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept simple instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in a routine work setting, deal with normal work stresses, understand, remember, and carry out detailed instructions, set realistic goals or make plans independently of others, deal with the stress of semi-skilled and skilled work, interact appropriately with the general public, and travel in unfamiliar places. (Tr. 540).

Schremly opined that his patient would have a "marked" restriction of activities of daily living, an "extreme" difficulty maintaining social functions, "constant" difficulties in concentration and persistence resulting in failure to complete tasks in a timely manner, and "repeated" episodes of deterioration or decompensation in work or work-like settings.  (Tr. 541).

A one-time psychological examiner, Dr. Kenneth Starkey, had previously evaluated the plaintiff and diagnosed a number of possible conditions including a mood disorder "possibly associated with marijuana use or a thyroid dysfunction," cannabis abuse in partial remission by the plaintiff's report, and "rule out" substance-induced mood disorder, polysubstance dependence, and borderline intellectual functioning.  (Tr. 237).  He assigned a GAF score of 55, consistent with "moderate symptoms or moderate difficulty in social, occupational, and school functioning" per the DSM-IV-TR.  (Tr. 238).  In terms of functional restrictions, he felt that she could understand and remember simple, one or two step instructions without difficulty, was likely to become at least mildly distressed when relating to coworkers and have at least moderate difficulty taking instruction from supervisors and become at least moderately distressed under the pressures found in most day-to-day work settings "at the present time."  (Id.).  He felt that her status might change with three to six months of formal psychiatric counseling, including effective treatment for her marijuana use problem.  (Id.).

In discussing the mental evidence, the ALJ detailed certain discrepancies between the plaintiff's statements to mental health sources, and noted she had positive urine drug screens and had admitted smoking marijuana at the time of her admission to treatment at the CCC. (Tr. 17-18).[3]

However, the only specific reason given for rejecting Dr. Schremly's restrictions was that they were inconsistent with a psychosocial assessment completed by a CCC nurse in September 2007 which showed "no impairment in the claimant's societal/role functioning." (Tr. 18, 460).

Normally, the opinion of a treating source is entitled to great weight, and may be entitled to controlling weight if it is supported by signs, symptoms, and laboratory findings. In addition, the opinion of an examining source such as Dr. Starkey is generally given greater weight than the opinion of a non-examining source. 20 C.F.R. § 416.927(d)(2). If the opinion of a treating source is rejected, the regulations require that the ALJ provide "good reasons" which allow a claimant and a subsequent reviewer to understand the weight he gave to the treating source medical opinion and the reasons for that weight. Social Security Ruling 96-2p, quoted in Blakley v. Commissioner of Social Security, 581 F.3d 399, 407 (6th Cir. 2009).

---

[3]Under Public Law 104-121, drug addiction or alcoholism may not be a material contributing factor to a disability finding, but this was not explicitly given as a reason for denying benefits.

While the inconsistency of Dr. Schremly's opinion with that of a CCC nurse completing an intake form several months earlier is not an adequate reason by itself for dismissing his opinion, in the context of the entire decision, the court understands the rejection to have been based at least partly on the plaintiff's inconsistent statements and drug problems.  Thus, the procedural goals of the Commissioner's regulations have been met in the present case, even though the ALJ's reasoning could have been clearer. See Wilson v. Commissioner of Social Security, 378 F.3d 541, 547 (6th Cir. 2004). The same would presumably be true of Dr. Starkey's opinion, although the ALJ gave no specific reason for discounting it, merely saying that he had considered it.  (Tr. 22).

Merely rejecting the opinions of treating and/or examining sources does not explain how the ALJ reached his functional capacity finding, however. The hypothetical restrictions track statements made by two non-examining state agency psychologists, Dr. Edward Stodola and Dr. Ann Demaree, who reviewed a portion of the record and prepared mental residual functional capacity assessment forms. Both sources indicated in the "Summary Conclusions" portion of the forms that the plaintiff would have a "moderately limited" ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, and to respond

10

appropriately to changes in the work setting.  (Tr. 255-6, 496-7).  In the third part of their forms, in which they are asked to "elaborate on the preceding capacities," they gave the restrictions ultimately accepted by the ALJ and given in his hypothetical question to the VE, supra, which do not include any limitation on working around the general public. Thus, the court assumes that the ALJ adopted the third part of the forms prepared by the non-examiners, although there is no guidance in the ALJ's decision as to how he reached this conclusion.

The Commissioner's regulations at 20 C.F.R. § 416.927(d)(2)(ii) provide that, "[u]nless the treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . as the [ALJ] must do for any opinions from treating sources, nontreating sources, or other nonexamining sources who do not work for us."

The absence of any explanation by the ALJ for the weight given to Drs. Stodola and Demaree leaves the court unable to review whether substantial evidence supports the administrative decision, particularly in view of the lack of any discussion of the discrepancies between the non-examiners' belief that the plaintiff would have a "moderately limited" ability to interact with the general public and the failure to include any comparable statement in Part III of their forms.[4]  Since the jobs

---

[4] The Court of Appeals in Ealy v. Commissioner of Social Security, 594 F.3d 504, 516 (6th Cir. 2010) declined to rule on the issue of which part of the forms prepared by

identified by the VE all involve such contact, this is an issue that needs to be dealt with on remand.

The decision will be remanded for further consideration.

This the 19th day of October, 2011.

Signed By:
G. Wix Unthank
United States Senior Judge

---

the state agency psychological reviewers should be given controlling weight.  The undersigned has consistently found that the administration may not ignore discrepancies between Parts I and Part III of the forms.  See, e.g., Woods v. Barnhart, No. 6:04-325-GWU (E.D. Ky. May 18, 2005).